661 So.2d 403 (1995)
T.H., natural mother of T.H., a child, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 95-531.
District Court of Appeal of Florida, First District.
October 18, 1995.
Julian A. Harris, Jr., Pensacola, for Appellant.
R. John Westberry, Assistant District Legal Counsel, Dept. of Health and Rehabilitative Services, Pensacola, for Appellee.
PER CURIAM.
Appellant, T.H., the mother of an infant daughter who was adjudicated dependent by the trial court under Chapter 39, Part III, section 39.40, et seq., Florida Statutes (1993), appeals the adjudication/disposition order entered in the dependency proceeding which, among other things, requires the mother to undergo bi-monthly pregnancy testing. Because the trial court has not been granted the power to require pregnancy testing, we reverse that portion of the order. We affirm the order in all other respects.
T.H.'s infant daughter was her third cocaine dependent child. The trial court explained that the purpose of the pregnancy testing, which was to be conducted in conjunction with urinalysis for the purposes of *404 drug testing,[1] was to identify a pregnancy so that the court could take steps to ensure that no more drug-exposed children would be born to appellant. The trial court indicated that, in the event appellant tested positive for drugs and was determined to be pregnant, the trial court intended to place her in jail.
We share the trial court's concern with the serious impacts of drug use during pregnancy. Fetal exposure to drugs is a matter of great public and legal concern.[2] Nevertheless, while Part III of Chapter 39, Florida Statutes, provides the trial court with broad powers to protect the welfare of the minor child in a dependency case, see, In the Interest of J.R.T., 427 So.2d 251, 252 (Fla. 5th DCA 1983), Chapter 39 does not grant, and we have not been directed to any state statute which would so grant, the trial court the power to order the mother of the dependent child to undergo the challenged pregnancy testing.[3]See, In the Interest of J.P., 586 So.2d 485 (Fla. 1st DCA 1991) (trial court did not have statutory authority to require HRS to pay child's medical expenses); Department of Health and Rehabilitative Services v. Cole, 574 So.2d 160, 163 (Fla. 5th DCA 1990) (trial court lacked statutory authority to require HRS to pay fees of attorney of guardian ad litem). Accordingly, we reverse that provision of the trial court's order which requires T.H. to undergo pregnancy testing. Appellant's remaining arguments are without merit or were waived in the proceeding below and will not be addressed.
REVERSED, in part, and AFFIRMED, in part, and REMANDED.
WOLF, WEBSTER and VAN NORTWICK, JJ., concur.
NOTES
[1] Appellant consented to the urinalysis requirement.
[2] See e.g., Johnson v. State, 578 So.2d 419 (Fla. 5th DCA 1991), quashed, 620 So.2d 1288 (Fla. 1992); Deborah Appel, Drug Use During Pregnancy: State Strategies to Reduce the Prevalence of Prenatal Drug Exposure, 5 U.Fla.J.L. & Pub. Pol'y 103 (1992); Dorothy E. Roberts, Punishing Drug Addicts Who Have Babies: Women of Color, Equality and the Right of Privacy, 104 Harv. L.Rev., 1419 (1991); Michael T. Flannery, Court-Ordered Prenatal Intervention: A Final Means To The End Of Gestational Substance Abuse, 30 J.Fam.L., 519 (1991/1992); D. McGinnis, Prosecution of Mothers of Drug-Exposed Babies: Constitutional and Criminal Theory, 139 U.Pa.L.Rev., 505 (1990); Note, Rethinking (M)otherhood: Feminist Theory and State Regulation of Pregnancy, 103 Harv.L.Rev., 1325 (1990).
[3] We find it unnecessary to address any constitutional issues relating to the pregnancy testing requirement.